UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINA MARIE MEURER,

        Plaintiff,                   Civil Action No. 12-12506

v.                                  HON. SEAN COX
                                  U.S. District Judge
                                  HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Regina Marie Meurer brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on April 11, 2011, alleging disability as of August 1, 2010. (Tr. 160-163, Tr. 164-172). After the initial denial of benefits, Plaintiff requested an administrative hearing (Tr. 112-113), which was held in Flint, Michigan on December 20, 2011, Administrative Law Judge ("ALJ") Kevin W. Fallis presiding. (Tr. 29-56). Plaintiff, represented by attorney Clifford Walkon, testified at the hearing, (Tr. 31-50), as did Vocational Expert ("VE") Pauline McEachin. (Tr. 27). On February 13, 2012, ALJ Fallis found that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 24).

-1-

On May 2, 2012, the Appeals Council denied review of the ALJ's opinion. (Tr. 1-6). Plaintiff then filed for judicial review in this Court.

## BACKGROUND FACTS

Plaintiff, born May 30, 1960, was 50 years old when the ALJ issued his decision. (Tr. 160). She completed 12th grade, but did not enroll in any college classes. (Tr. 40). She currently works part-time at Jo-Ann Fabrics operating a cash register and working in the fabric department, and previously worked as a manager at a sewing shop in Minnesota. (Tr. 41, 35). She alleges disability as a result of the following: bipolar disorder, depression, post-traumatic stress disorder (PTSD), fibromyaligia, hypoglocemia, high blood pressure, high cholesterol, and arthritis in knees. (Tr. 73).

### A. Plaintiff's Testimony

Plaintiff testified that she currently lives by herself in an apartment in Flint, MI. (Tr. 37-38). The apartment complex is multiple stories, and Plaintiff rents a basement unit. (Tr. 38). She has to walk down 13 steps to get to her apartment. (Tr. 38). Plaintiff testified that she has trouble descending steps because of problems with her right knee and has to take one step at a time. (Tr. 38-39).

Plaintiff takes the city bus to work, and she drives herself to the grocery store. (Tr. 39). She drives usually once a month, and only drives about one half-hour at a time. (Tr. 39). She works at Jo-Ann Fabrics between one and three days in any given week. (Tr. 40-41). At Jo-Ann Fabrics, she operates the cash register, works in the fabric department where she cuts fabric and puts it away, and assists customers. (Tr. 41). She testified that she did not feel she would be able to work full time because of her physical and emotional impairments. (Tr. 41). She was fired from a store in Minnesota because she could not operate the computer. (Tr. 42).

-2-

She testified that she is currently taking prescribed medications, and that dry mouth is the only side-effect. (Tr. 45). She said that her doctors have told her to drink more fluids to combat the dry mouth because they did not want to adjust her medication dosage. (Tr. 45). She testified that she misses a dose in the morning roughly once a week when she is "[i]n a hurry to get out the door to get to work." (Tr. 46).

Plaintiff identified her back as her biggest physical problem. (Tr. 46). She testified that she had problems with her back all her life, and the pain was constant. (Tr. 46-47). On a scale of one to ten, she rated the pain as a "seven" when she woke up in the morning, an "eight" after some activity, but would decrease to a "seven" or less when her medication took effect. (Tr. 47). She also stated that she has consistent problems with her neck after she was involved in an automobile accident as a teenager. (Tr. 47-48). She rated the pain as frequently a "five," but can go up to an "eight, eight and a half." Medication will bring the pain down to a "five." (Tr. 48). Plaintiff also testified that she suffered from shoulder pain stemming from a fall on her right side when she was pregnant. (Tr. 48-49). She rated the pain as ranging between "seven to nine," but it goes down to a "seven" after she takes medication. (Tr. 49). Finally, Plaintiff testified that she has pain in her knee because of a few falls, but that the pain was not constant. She rated the pain as ranging between "seven and nine." (Tr. 50).

Regarding her mental impairments, Plaintiff testified that she was diagnosed with depression approximately 25 years ago. (Tr. 51). She said that her doctors prescribed medication to assist with the depression and that it helped, but that she experienced severe sensitivities to the medication. (Tr. 51). She stated that her last counseling session was in the Summer of 2011. (Tr. 52). She testified that she experiences panic attacks that include shaking, jittering, and crying brought on by certain sounds, smells, sights, and stressful

situations.  (Tr. 53-54).

In a typical day, she wakes up, takes her medication, fixes something to eat if she is hungry, and unpacks boxes of her personal belongings that a friend's teenage children have brought over from her storage unit.  (Tr. 55).  She does not lift them.  (Tr. 55).  She washes dishes, although she can only stand at the sink for 10 minutes at a time.  (Tr. 56).  She does all of her own cooking, she shops for groceries once a month, and vacuums the carpet, although it aggravates her back and shoulder.  (Tr. 56).  She testified that she gets together with friends about once a week, but that she sees her children only a few times a year.  (Tr. 57-58).  She testified that she has issues getting dressed in the morning, and has troubles getting out of the bathtub because there are no railings.  (Tr. 58).  She testified that she sews, quilts, and crochets, although she does has some trouble with it because she cannot sit for long periods of time. (Tr. 59).  She reads books to help her fall asleep at night.  (Tr. 59).  She has a movie or the radio on almost all the time, but mainly just for background noise.  (Tr. 59).  She stated that she is able to lift rolls of fabric, estimated to be more than 20 pounds. (Tr. 62).  She claimed that she can only sit for a half-hour to an hour at a time, depending on the chair.  (Tr. 62).  She testified that she can stand between two and three hours, and that she can walk for about 10 minutes.  (Tr. 62).

### B. Medical Evidence[1]

### 1. Treating Sources

On September 30, 2010, Plaintiff began receiving counseling services from Auburn Counseling Associates in Flint, MI.  (Tr. 266).  Plaintiff complained of frequent spells of shaking, jittering, and crying.  (Tr. 266).  She said that her heart raced and that she suffered

---

[1]Records pertaining to conditions unrelated to the disability claim have been reviewed in full but are omitted from discussion.

-4-

from panic attacks. She said that she was admitted to Hurley Medical Center on August 13, 2010 after a panic attack, and then referred to New Passages. (Tr. 266). Plaintiff said she was verbally, sexually, and physically abused by her father when she was a child. (Tr. 266). On October 14, 2010, Joan Brazelton, L.M.S.W. noted that Plaintiff complained of having her hours cut at work and was concerned whether she would have enough money to live. (Tr. 265). On November 4, 2010, Brazelton noted that Plaintiff again complained about having her hours cut at work and not having enough income, but that her friends were supporting her. In a Medical Questionnaire dated July 7, 2011, Dr. Anant Shah, M.D., also of Auburn Counseling Associates, expressed that Plaintiff suffered from Bipolar Disorder including the following symptoms: depression, crying spells, panic attacks, sleep disturbances, anxiety, and anger. He suggested that Plaintiff needed to continue her medication, and that Plaintiff's prognosis was guarded. (Tr. 329). He concluded that Plaintiff suffered from physical and mental limitations, that she had difficulty dealing with the public, and that she suffered from fatigue and had problems dealing with the public. (Tr. 329).

Brazelton also completed a mental residual functional capacity assessment. (Tr. 330-32). She concluded that Plaintiff suffered "moderate" limitations with the ability to understand and remember detailed instructions, the ability to travel in unfamiliar places or use public transportation, and the ability to set realistic goals or make plans independently of others. (Tr. 331-32). She determined Plaintiff suffered from the following "marked" limitations: the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to sustain an ordinary routine without supervision; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact with the general

public; the ability to ask simple questions or request assistance; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and the ability to respond appropriately to changes in the work setting. (Tr. 331). Counselor Brazelton assigned a Global Assessment of Functioning ("GAF") score of 50.[2]

On October 18, 2010, Plaintiff was seen by Dr. Faranak Fiedler, M.D. at the McLaren Family Medicine Center in Flint, MI. (Tr. 277). She complained of abdominal pain, discomfort, and nausea, and described the pain as "seven" to "nine" out of ten. (Tr. 277). She gave a history of irritable bowel syndrome, but said that the pain was now lasting longer than normal. (Tr. 277). She was prescribed medication and was told to increase her fluid intake. (Tr. 277). On December 3, 2010, she was seen by Dr. Ezequiel Martinez-Madrigal, M.D. at the McLaren Family Medicine Center. (Tr. 274). Her chief complaint was chronic knee pain that she had experienced for the last seven years. (Tr. 274). Plaintiff also mentioned that she was previously diagnosed with bipolar disorder by Dr. Anant Shah, and that she was prescribed Depakote. (Tr. 274). Dr. Martinez-Madrigal noted that Plaintiff had a preserved range of motion in the two joints, and there was no evidence of cyanosis. (Tr. 274). On April, 11, 2011, Plaintiff was again seen by Dr. Fiedler. She complained of right knee pain that worsened when she ascended and descended stairs, especially after work. (Tr. 270). She told the doctor that her knee previously locked, and that she could not move as a result. (Tr. 270). The doctor noted that there was no deformity of the knees, and her range of motion was normal. (Tr. 270). The doctor concluded that Plaintiff suffered from right

---

[2] A GAF score of 41-50 indicates "[s]ymptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. AmericanPsychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR*)(4th ed. 2000).

knee pain with osteoarthritis, confirmed by x-ray; chronic upper back pain, mostly muscle spasm due to weight and posture; a Vitamin D deficiency; and dyslipidemia. (Tr. 270). She was prescribed Flexeril for the back pain, and Zocor for the dyslipidemia. (Tr. 270). The doctor ordered physical therapy for the upper back pain and right knee pain. (Tr. 270).

On June 6, 2011, Plaintiff was seen at the McLaren Family Medicine Center by Dr. Nobin Kottukapally, M.D. (Tr. 308). Plaintiff complained of swelling in her feet after prolonged ambulation. (Tr. 308). At the time, she was living at a women's shelter where the diet consisted of processed food that is high in salt. (Tr. 308). Plaintiff said that she was able to relieve the swelling by resting a few times a day. (Tr. 308). Plaintiff was advised to follow up with her primary care physician. (Tr. 308).

On December 7, 2011, Dr. Shruti Pathak completed a Medical Questionnaire regarding Plaintiff's physical impairments. (Tr. 350-351). The doctor stated that Plaintiff suffered from: fibromyalgia, causing severe pain in the neck and back; right knee osteoarthritis, causing pain and stiffness in the knee; migraine headaches; and hypertension, causing elevated blood pressure. (Tr. 350). The doctor concluded that Plaintiff could not sustain full-time employment due to her functional limitations. (Tr. 351). Dr. Pathak also completed a physical residual functional capacity assessment on behalf of Plaintiff. He limited Plaintiff to lifting and carrying only 1-5 pounds, standing/walking for three hours total, one hour without interruption, and determined that she had to take an unscheduled break once every hour. (Tr. 353-54).

### 2. Non-Treating Sources

In July 2011, Darlene Doerscher, M.A., and Marianne Goergen, Psy.D., conducted a psychological/psychiatric evaluation on behalf of the State of Michigan and the SSA. (Tr. 322-325). Plaintiff reported health issues including fibromyalgia, arthritis, hypertension,

high cholesterol, and vertigo. (Tr. 322). She described herself as irritable and easily angered, and that she suffered from hypersomnia, overeating, and daily suicidal thoughts. (Tr. 322). Doerscher and Goergen concluded that the Plaintiff was able to remember and complete simple to complex tasks, but that she may need more time due to a lack of motivation caused by depression. (Tr. 324). Plaintiff was diagnosed with PTSD and Bipolar Disorder, and she was assigned a GAF score of 50.

The same month, Leonard C. Balunas, Ph.D. conducted a non-examining Psychiatric Review Technique Assessment of the treating records available, finding the presence of affective disorder (bipolar syndrome) and osteoarthritis and allied disorders. (Tr. 78). Under the "'B' Criteria," Dr. Balunas found that Plaintiff experience mild restrictions in activities of daily living, and moderate restrictions in social functioning and maintaining concentration, persistence, or pace with no episodes of decompensation since the alleged onset of disability. (Tr. 79). Dr. Balunas completed a Physical and Mental Residual Functional Capacity Assessment. Regarding her physical limitations, Dr. Balunas found that Plaintiff could lift/carry 25 pounds frequently and 50 pounds occasionally, stand and/or walk (with normal breaks) for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (Tr. 80). He determined that Plaintiff could push and/or pull without limitation, except the lift/carry limitation already discussed. (Tr. 80). Plaintiff was limited to occasionally climbing ladders, ropes, or scaffolds, but was able to frequently: climb ramps and stairs, balance, stoop (i.e. bending at the waist), kneel, crouch (i.e. bend at the knees), and crawl. (Tr. 81). Regarding her mental limitations, Dr. Balunas found that Plaintiff was moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; and respond appropriately to changes in the work

setting.  (Tr. 82-83).  Dr. Balunas concluded that Plaintiff could:

> understand, carry out, and remember simple instructions; make judgements
> that are commensurate with the functions of unskilled tasks i.e., work-related
> decisions; respond appropriately to supervision, coworkers, and work
> situations; and deal with most changes in routine work settings.  There are no
> problems with attention and there is sufficient concentration to perform simple
> 1 - 2 step tasks all on a routine and regular basis.  (Tr. 83).

## C.    Vocational Expert Testimony

VE Pauline McEachin classified Plaintiff's former work as a retail clerk as

light/unskilled work.[3]  However, the ALJ instructed the VE that he was not going to consider

Plaintiff's past relevant work because no quarters on the earnings report showed substantial

gainful activity.  (Tr. 66-67).

The ALJ the posed the following hypothetical question:

> For all of the hypotheticals, I would like you to assume that this individual is
> the same age, has the same education and work experience as the claimant.
> This individual would be able to perform work at the medium level, which is
> lift no more than 50 pounds occasionally, lift/carry up to 25 pounds frequently.
> Stand/walk for about six hours, and sit for up to six hours in an eight-hour
> workday with normal breaks.  This individual could occasionally climb
> ladders, ropes and scaffolds.  They could occasionally climb ramps or stairs.
> They could perform frequent balancing, and occasionally stoop, kneel, crouch
> and crawl.  Work would be limited to simple, routine and repetitive tasks
> performed in a work environment free of fast-paced production requirements,
> involving only simple work-related decisions and routine workplace changes.
> There could only be occasional and superficial interaction with the public. ...
> Any jobs available in the national or regional economy for this individual?

(Tr. 67-68).  The VE responded that such an individual could work as a kitchen helper

(10,000 jobs in the regional economy), housekeeper (8,000), and packager (3,000).  (Tr. 68).

---

[3]20 C.F.R. §404.1567 (a-d) defines *sedentary* work as "lifting no more than 10
pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and
small tools;" *light* work as "lifting no more and 20 pounds at a time with frequent lifting
or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than
50 pounds at a time with frequent lifting or carrying of objects weighing up to 25
pounds;" and that exertionally *heavy* work "involved lifting no more than 100 pounds at a
time with frequent lifting of objects weighing up to 50 pounds.

The VE also said that each of these positions are categorized as medium/unskilled work. (Tr.
68).

> The ALJ the posed the next hypothetical:
>
> Hypothetical number two, this individual would be limited to light work,
> which is lift up to 20 pounds occasionally, and lift/carry up to 10 pounds
> frequently. Stand/walk for about six hours, and sit for up to six hours in an
> eight-hour workday with normal breaks. This individual could never operate
> foot controls with the right lower extremity. They could never climb ladders,
> ropes or scaffolds. They could occasionally climb ramps or stairs.
> Occasionally balance, stoop, kneel, crouch, and crawl. . . . They would be
> limited to occasional overhead reaching bilaterally. They would have to avoid
> all exposure to excessive vibration, all use of moving machinery, and all
> exposure to unprotected heights. Non-exertionally we would have the exact
> same limitations as those in hypothetical one.

(Tr. 69). The VE responded that such an individual could perform work as an inspector
(6,000), assembler (4,000), and sorter (4,000), and classified the type of work as
light/unskilled.

The ALJ posed a third hypothetical: "I'd like you to apply this to all the previous
hypotheticals, and that is that this individual would be off task 20 percent of the day in
addition to their regularly scheduled breaks. Any jobs available in the national or regional
economy for this individual?" (Tr. 69-70). The VE responded that such an individual would
not be able to work in a competitive work environment. (Tr. 70).

The ALJ posed a final hypothetical to the VE: "[D]ue to the individual's doctor visits
and symptoms, this individual would be absent from work for two workdays per month. Any
job available in the national or regional economy for this individual?" (Tr. 70). The VE
responded that this would be preclusive in a competitive work environment. (Tr. 70).

### D.    The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that Plaintiff suffered the severe
impairments of "depression, [PTSD], osteoarthritis of the right knee, right knee meniscus

-10-

problem, hypertension, irritable bowel syndrome (IBS), chronic neck and back pain, shoulder pain, fibromyalgia, and headaches." (TR. 13). However, the ALJ found that none of the conditions listed met or equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (TR. 18). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 404.1567(b) and 416.967(b) with the following restrictions:

> never operate foot controls with the right lower extremity; never climb ladders, ropes or scaffolds; occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching and crawling. Occasional bilateral overhead reaching. Avoid all exposure to excessive vibration, use of moving machinery and exposure to unprotected heights. Work is limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions and routine work place changes. Only occasional superficial interaction with the public and co-workers. (Tr. 19).

The ALJ found that Plaintiff had no past relevant work but, relying on the VE's testimony, the ALJ found that Plaintiff could perform other work that existed in significant number within the national economy. (Tr. 21-22).

The ALJ found Plaintiff credible as to the existence of her impairments, but rejected her claims regarding the severity and persistence of her symptoms. First, he noted the "mild findings" regarding Plaintiff's osteoarthritis and lower back pain, and pointed out that the only proposed treatment was for Plaintiff to take Tylenol and physical therapy. (Tr. 20). Regarding the shoulder pain, fibromyalgia, and headaches, the ALJ found that the medical evidence suggested only mild findings, and he noted the lack of regular treatment for these conditions. (Tr. 20). He also rejected Plaintiff's claim regarding the side-effects of her medication, finding that there was nothing in the record to suggest they would interfere with her ability to work. (Tr. 20). Regarding the impairment of IBS, the ALJ noted that the condition appeared to be under control with the assistance of medication. (Tr. 20).

-11-

Regarding Plaintiff's mental impairments, the ALJ highlighted the fact that Plaintiff had never been hospitalized, and noted that her treatment records indicated that her symptoms were brought on by certain situations like her hours at work being cut. (Tr. 20). He noted Plaintiff's ability to handle housework and her personal hygiene, and her ability to manage her own finances. The ALJ noted Plaintiff's ability to remember, understand, and communicate with others, and that she was oriented to time, place, and person. (Tr. 20). Finally, the ALJ highlighted the fact that Plaintiff was able to work part-time at a job that exceeded the RFC, but noted that she may not be able to work at that same job on a full-time basis. (Tr. 20).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. § 405(g); *Sherrill v. Secretary of Health and Human Services*, 757 F.2d 803, 806 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. V. NLRB*, 305 U.S. 197, 229, S.Ct. 206, 83 L.Ed. 126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*,

884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death of which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. § 416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at Step 5 to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health and Human Services*, 735 F.2d 962, 964 (6th Cir. 1984).

## ANALYSIS

Plaintiff makes five arguments in favor of remand.  First, she argues that the ALJ made an improper determination regarding Plaintiff's credibility, especially the effects of Plaintiff's fibromyalgia, as required by Sixth Circuit precedent. *Plaintiff's Brief* at 8-10. Second, Plaintiff argues that the ALJ failed to incorporate all of Plaintiff's mental and physical limitations in the hypothetical questions posed to the VE, and that the response given by the VE cannot act as substantial evidence for the ALJ's RFC.  *Plaintiff's Brief* at 11, 14, 15-16.  Third, Plaintiff argues that the ALJ failed to give proper deference to the opinion of Plaintiff's treating and consultative physicians.  *Plaintiff's Brief* at 11-12.

-13-

Fourth, Plaintiff argues that the ALJ failed in his duty to properly develop the administrative record. *Plaintiff's Brief* at 12-14. Finally, Plaintiff argues that the ALJ failed to ascertain the inconsistencies between the Dictionary of Occupational Titles (DOT) and the VE's testimony. *Plaintiff's Brief* at 14-15.

### A. Plaintiff's Credibility

Plaintiff argues that the ALJ did not provide sufficient reasons for discounting her testimony concerning the intensity, persistence, and limiting effects of her physical and mental impairments, including the effects of fibromyalgia. She argues that the ALJ's opinion does not comply with the requirements of Social Security Ruling[4] ("SSR") 96-7p and 20 C.F.R. § 404.1529, and that the ALJ's opinion was "bereft of an actual discussion," *Plaintiff's Brief* at 8, and contained only "blanket assertions." *Plaintiff's Brief* at 9.

The credibility determination, guided by SSR 96-7p, is a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment . . . that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p, directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by

---

[4] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed.Appx. 496, 498 (6th Cir. 2006), quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir.2004) (citations omitted).

-14-

objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record."  20 C.F.R. § 404.1529(c)(3) lists the factors to be considered in making a credibility determination, including daily activities, "precipitating and aggravating factors," treatment received for relief of symptoms, and additional considerations relevant to functional limitations. 20 C.F.R. § 404.1529(c)(3).

"[S]ubjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record."  *Jones v. Commissioner*, 336 F.3d 469, 475 (6th Cir. 2003)(citing *Young v. Secretary of HHS*, 925 F.2d 146, 150-51 (6th Cir. 1990)).  When assessing the Claimant's alleged impairments, the "ALJ may properly consider the credibility of a claimant when making a determination of disability."  *Id.* 476 (*citing Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997)).  An ALJ's credibility determination is entitled to great weight, but it must be supported by substantial evidence.  *Id.* at 531.  "[G]iven the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important."  *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

The ALJ's decision to discount Plaintiff's claims concerning the intensity, persistence and limiting effects of her physical impairments is well supported and explained.  Specifically, the ALJ noted the mild findings regarding Plaintiff's osteoarthritis and lower back pain.  (Tr. 20).  The ALJ also noted the mild findings and lack of consistent treatment  for Plaintiff's fibromyalgia, headaches, and shoulder pain.  (Tr. 20).  During any exchange between the ALJ and counsel, the ALJ noted that Dr. Pathak's "diagnosis" of fibromyalgia was in fact not a diagnosis since there was no diagnostic test performed, but was instead a history of Plaintiff's alleged medical

-15-

conditions.  The ALJ discussed Plaintiff's treatment for IBS, but noted that the problem seemed to be under control with proper medication.  (Tr. 20).  Regarding her alleged mental impairments, the ALJ discussed the fact that Plaintiff had never been hospitalized as a result of her mental impairments, and that her depressive mood was brought about by specific stressors like having her hours cut at work.  (Tr. 20).  Finally, the ALJ noted Plaintiff's testimony regarding her ability to consistently care for herself, her ability to lift objects that are not heavy, and her ability to understand and communicate with others, and that she was oriented to time, place, and person.  (Tr. 20).

There is no support for the argument that the ALJ performed an inadequate credibility analysis or applied the wrong legal standard.  "[A]n ALJ's credibility determination about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)(citing *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).  The deference generally accorded the administrative credibility finding is appropriate in this instance. As such, the ALJ's credibility determination should not be disturbed.

### B.  The Hypothetical Question and the RFC

Next, Plaintiff argues that the hypothetical question given to the VE was insufficient to convey all of Plaintiff's mental and physical impairments and, therefore, the VE's testimony cannot act as substantial evidence in support of the ALJ's RFC finding.  Specifically, Plaintiff argues that the hypothetical question did not contain the following limitation contained in the RFC: "Work is limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions and routine work place

changes." *Plaintiff's Brief* at 11.

A hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments. *Varley v. Commissioner of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). While the Sixth Circuit has rejected the proposition that all of the claimant's maladies must be listed verbatim, "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] individual physical and mental impairments." *Webb v. Commissioner of Social Sec.*, 368 F.3d 629, 632 (6th Cir. 2004). If the hypothetical question is deficient, the ALJ cannot rely upon the VE's testimony to prove the existence of a substantial number of jobs that Plaintiff can perform in the national economy. *Edwards v. Barnhart*, 383 F.Supp.2d 920, 927 (E.D.Mich. 2005).

Plaintiff's argument has no merit. In the first hypothetical question, the ALJ included the following mental limitation: "Work would be limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes." (Tr. 68). This is identical to the language Plaintiff identifies as being in the ALJ's RFC but not in the hypothetical. Defendant correctly points out that, although the language does not appear verbatim in the second hypothetical question, the ALJ incorporated the above mental limitations by reference. The ALJ, after placing greater restrictions on physical limitations, incorporated the mental limitations by saying, "Non-exertionally we would have the exact same limitations as those in hypothetical number one." (Tr. 69). The ALJ then asked the VE if she needed him to repeat them, to which the VE declined. (Tr. 69). The ALJ clearly incorporated the mental limitations in hypothetical question one by reference along with the additional restrictions in

-17-

hypothetical question two.  As such, Plaintiff's argument has no merit.

### C.   Weight Given to Treating and Non-Treating Physicians

Next, Plaintiff argues that the ALJ erred when he rejected the opinion of Dr. Shah, and argues that the ALJ's opinion is conclusory and does not contain sufficient discussion regarding the ALJ's basis for rejecting the opinion.  *Plaintiff's Brief* at 11.  Specifically, Plaintiff argues that the ALJ's assertion that Dr. Shah was "not an acceptable source," is contrary to law and, therefore, erroneous.  Further, Plaintiff argues that the ALJ erred when he rejected Dr. Pathak's medical opinion that Plaintiff could not work due to her physical impairments.  *Plaintiff's Brief* at 12.

Regarding the weight afforded Dr. Shah's opinion, Plaintiff appears to be misreading the ALJ's opinion.  The ALJ was discussing the treating notes of Joan Brazelton, L.M.S.W., not Dr. Shah when he wrote "this is not an acceptable source."  (Tr. 16-17).  While the ALJ was required to consider the opinion of Brazelton, a licensed social worker, her findings were not entitled to controlling weight and the deference accorded a treating physician or other "acceptable medical sources."  SSR 06-03p, 2006 WL 232939, *2 (August 9, 2006).  Social Security Ruling (SSR) 06-03p identifies "licensed clinical social workers" as an "other source," not an "acceptable medical source."  *Id.*  The Plaintiff's argument has no merit.

Plaintiff also argues that the ALJ failed to properly evaluate Dr. Pathak's opinion, and failed to give the opinion controlling weight.  "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Commissioner of Social Sec.*, 710 F.3d 365, 372 (6th Cir. 2013)(citing 20 C.F.R. §

-18-

404.1527(c)(2)).  The ALJ must give "good reasons" for discounting the treating-source opinion.  20 C.F.R. § 404.1527(c)(2).  "Good reasons" are those that are "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2p.

Plaintiff's argument is without merit.  The ALJ discussed Dr. Pathak's findings including his discussion of fibromyalgia, right knee osteoarthritis, migraine headaches, and hypertension.  As previously stated, the ALJ elicited from counsel that Dr. Pathak conducted no diagnostic tests for fibromyalgia, instead relying on the Plaintiff's history.  The ALJ discussed the pain associated with the diagnosis including headaches unilateral alternating sides, upper back pain, tenderness, and stiffness and a decreased range of motion in the upper back and in the knees.  The ALJ then included Dr. Pathak's RFC assessment.  (Tr. 17).  The ALJ discussed the fact that Dr. Pathak's doctor-patient relationship was only two-months old at the time the doctor filled out the assessment, and noted that Dr. Pathak's findings were "quite conclusory."  (Tr. 17-18).

Moreover, my own review of the record and of the ALJ's opinion shows that the decision to discount Dr. Pathak's opinion was well supported by the record.  Dr. Pathak bases much of his RFC on the Plaintiff's subjective complaints, and the treating relationship was very short.  On two separate occasions within the period of alleged disability, doctors noted Plaintiff had  a preserved or normal range of motion in her right knee.  (Tr. 270, 274).  Dr. Fiedler concluded that Plaintiff's chronic back pain was mostly muscle spasms due to her weight and posture.  (Tr. 270).  The ALJ's opinion is well supported by the record.

### D.  Developing the Administrative Record

-19-

Next, Plaintiff argues that the ALJ failed to develop the administrative record. Specifically, Plaintiff faults the ALJ for failing to subpoena the case files from Plaintiff's prior disability case where evidence demonstrated Plaintiff's diagnosis of fibromyalgia and her positive trigger. *Plaintiff's Brief* at 12-13. Plaintiff argues that this evidence was pertinent to the court, and that the prior administrative file "could" have made the "law of the case" doctrine apply. *Plaintiff's Brief* at 13.

At the hearing, and prior to Plaintiff's testimony, the ALJ asked Plaintiff's counsel if he had any objection to the exhibits that were presently before him, and counsel had no objection. (Tr. 30). The ALJ the asked, "Counsel, are you aware of any outstanding medicals at this point, or *any* records, or do we have a complete file." (Tr. 30) (emphasis added). Plaintiff's counsel said he believed the file was complete aside from records from a hospital visit in August 2010 for psychiatric problems. (Tr. 30). Counsel then requested two weeks to obtain the records, and the ALJ gave him thirty days. (Tr. 31). Plaintiff's counsel again stated, "That's the only record that I'm aware of." (Tr. 32). Later, as counsel recited a list of alleged impairments, the ALJ asked the name of the doctor that diagnosed the fibromyalgia. Counsel indicated that the prior application for DIB and SSI included a consultative examination indicating positive trigger points for fibromyalgia. (Tr. 33). The ALJ asked whether there was an actual diagnosis of fibromyalgia since the alleged disability onset date. (Tr. 33). Counsel pointed to Dr. Pathak's Medical Questionnaire, but the ALJ responded that the Questionnaire relied upon Plaintiff's history, not a diagnostic study. (Tr. 33-34).

An ALJ is required to ensure the claimant receives a full and fair hearing. *Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). However, "[t]he burden of providing a complete record, defined as evidence complete and detailed

-20-

2:12-cv-12506-SFC-RSW   Doc # 16   Filed 05/30/13   Pg 21 of 24   Pg ID 477

enough to enable the [Commissioner] to make a disability determination, rests with the claimant." *Landsaw v. Secretary of Health and Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). The ALJ has a heightened duty to develop the administrative record "when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures. *Wilson v. Commissioner of Social Sec.*, 280 Fed. Appx. 456, 459 (6th Cir. 2008)(citing *Lashley*, 708 F.2d at 1051-52).

In this case, Plaintiff was represented by an attorney at the hearing, so the ALJ had no special or heightened duty to develop the record beyond the evidence submitted to him. Furthermore, the ALJ specifically asked counsel if he needed to submit any additional information and was willing to provide him with time if needed. Aside from the hospital records previously mentioned, counsel did not identify any other materials, including the previous administrative file. Additionally, Plaintiff does not allege that the previous file would have conclusively established a fact at issue. Plaintiff merely alleges that the previous file could have alleviated the ALJ's concerns regarding the positive trigger points, and that ALJ could have avoided the issue altogether by applying the "law of the case" doctrine. *Plaintiff's Brief* at 13-14. This is too speculative. The ALJ found Plaintiff's fibromyalgia to be a severe impairment, but found that intensity, persistence and limiting effects of the condition were overstated by Plaintiff. I fail to see how the previous file could have affected that decision. This argument is without merit.

### E.  Existence of Jobs in the National/Regional Economy Consistent with the RFC and the Dictionary of Occupational Titles

Finally, Plaintiff argues that the ALJ failed to ascertain whether there were inconsistencies between the VE's testimony and the *Dictionary of Occupational Titles*. *Plaintiff's Brief* at 14. Specifically, Plaintiff argues that the jobs identified by the VE have mental and physical limitations beyond the ALJ's RFC finding. *Plaintiff's Brief* at

-21-

15.

SSR 00-4p provides in part:

When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.

SSR 00-4p, 2000 WL 1898704, at *4 (December 4, 2000). "In an effort to insure that such actual or apparent conflicts are addressed, the Social Security Administration has imposed an affirmative duty on ALJs to ask the VE if the evidence that he or she has provided 'conflicts with [the] information provided in the DOT.'" *Lindsley v. Commissioner of Social Sec.*, 560 F.3d 601, 603 (6th Cir. 2009)(citing SSR 00-04p). If the VE indicates that his or her testimony is not consistent with the DOT, "ALJs must also 'obtain a reasonable explanation for the apparent conflict[s].'" *Id.* (citing SSR 00-04p).

Contrary to Plaintiff's contention, the ALJ did ask the VE to identify any inconsistencies between her testimony and the DOT, if they existed at all. Before the ALJ began questioning the VE about Plaintiff and her prior work history, he said the following to the VE: "I'll assume your testimony is based upon your knowledge, education, training and experience, and consistent with the DOT unless you tell me otherwise, all right (sic)?", and she responded that she understood. (Tr. 65-66). Moreover, counsel had the opportunity to examine the VE regarding any inconsistencies between her testimony and the DOT, but counsel declined to ask anything of the VE. (Tr. 70). Therefore, Plaintiff has waived any argument concerning alleged inconsistencies in the exertional requirements of the jobs identified by the VE. *See Beinlich v. Commissioner of Social Sec.*, 345 Fed. Appx. 163, 168-169 (6th Cir. 2009)("Even if there were an inconsistency, the plaintiff has not pointed to any authority that the ALJ erred in

-22-

his findings based on the VE's testimony, which went unchallenged by the Plaintiff until after the ALJ issued his decision."). "[T]he ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR00-4p. This obligation falls to the plaintiff's counsel, who had the opportunity to cross examine the VE and bring out any conflicts with the DOT." *Id.* at 168. Therefore, because the record shows that the ALJ asked if the VE's testimony was consistent with the DOT, and Plaintiff did not, and does not, point to any actual inconsistency, Plaintiff's argument is without merit.

**CONCLUSION**

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment be DENIED, and that Defendant's Motion for Summary Judgment be GRANTED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1 (d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 425 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specifixty will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall

address specifically, and in the same order raised, each issue contained within the objections.


Date: May 29, 2013                          s/ R. Steven Whalen
                                            R. STEVEN WHALEN
                                            UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on May
30, 2013, electronically and/or by U.S. Mail.

                                            s/ Michael Williams
                                            Relief Case Manager for the Honorable
                                            R. Steven Whalen